JOSEPH MENDOZA & others [1] *vs.* B.L.H. ELECTRONICS.

Middlesex.    October 5, 1988. — November 21, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Negligence*, Causing loss of consortium, Causing loss of parental society. *Actionable Tort. Parent and Child*, Companionship and society, Consortium.

An adult stepchild may not recover damages for the loss of a stepparent's companionship and society (consortium) due to injuries negligently inflicted on the stepparent by a third party. [438-439] LIACOS, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on October 26, 1983.

The case was tried before *Joseph S. Mitchell, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard W. Cole* for the plaintiffs.

*F. J. McDonald* for the defendant.

LYNCH, J.    This action arose from injuries sustained by Lucy Mendoza said to be negligently caused by her employer, B.L.H. Electronics (B.L.H.). Lucy's husband, Joseph, claimed damages for loss of consortium individually and on behalf of their three minor children. Ivan Mendoza, Joseph's natural son and Lucy's unadopted stepson, who was eighteen years old at the time of Lucy's injury, also sought loss of consortium damages. Prior to trial, the judge granted B.L.H.'s motion in limine which sought to exclude any evidence on Ivan's behalf, ruling that Ivan could not maintain his action because he was only Lucy's stepson and not her natural or

---

[1] Bryan, Mauricio, and Hernan, his minor children, and Ivan Mendoza. Only Ivan appeals from the judgment entered by the Superior Court. Lucy Mendoza is not a party to this action.

adopted son. At the close of the plaintiffs' case, the judge granted B.L.H.'s motion for a directed verdict against Ivan on the same ground.[2] Ivan appealed the judge's rulings and we transferred the case here on our own motion.

The sole issue for our determination is whether an adult stepchild may recover for his loss of parental consortium from a third party who negligently injured his stepparent. We conclude that he may not and we affirm the judgment of the Superior Court.

In *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 165 (1973), we recognized a right of recovery for loss of spousal consortium arising from negligently inflicted injuries by a third party. Subsequently, we ruled that minor dependent children could recover for loss of parental consortium. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 516 (1980). In *Ferriter*, however, we maintained "our determination to 'proceed from case to case with discerning caution'" when extending the right to recover to new relationships. *Id.*, quoting *Diaz, supra* at 165. This cautious approach flows from our recognition that "tort liability cannot be extended without limit." *Feliciano* v. *Rosemar Silver Co.*, 401 Mass. 141, 142 (1987).

Thus we recently concluded that parents could not recover for loss of a child's consortium. *Norman* v. *Massachusetts Bay Transp. Auth., ante* 303 (1988). In *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 270 (1986), the Appeals Court allowed a handicapped adult who was physically, emotionally and financially dependent on the injured parent to recover for loss of consortium. We have observed, however, that *Morgan* is consistent with *Ferriter* and *Diaz* because the physical, emotional and financial dependency of the child resulted in a unique and intense dependency intrinsic to the relationship of the parties. *Norman* v. *Massachusetts Bay Transp. Auth., supra* at 306. The plaintiff, Ivan Mendoza, now asks us to extend this unique relationship to include adult stepchildren. This we decline to do.

---

[2] Judgments were entered in favor of Joseph and the minor children.

In *Feliciano* v. *Rosemar Silver Co.*, *supra* at 141-142, we denied the plaintiff the right to recover for loss of spousal consortium even though she and the injured party lived "as a de facto married couple" for approximately twenty years and "had joint savings accounts, filed joint tax returns, jointly owned their home, depended on each other for companionship, comfort, love and guidance, and maintained a sexual relationship to the exclusion of all others." Focusing on the existence of a legal marital relationship to distinguish "the myriad relationships that may exist between mere cohabitants," we sought to avoid right to recovery standards that are "vague and indefinite." *Id.* at 142.[3] Thus this plaintiff lacks both the legal relationship to the injured party regarded as essential in *Feliciano*, and the unique and intense dependency recognized in *Norman* as giving rise to the right of recovery by a mentally and physically disabled adult child. By refusing to recognize the plaintiff's right of recovery in these circumstances, we continue to limit "protection to interests and values that are reasonably ascertainable," *Feliciano* v. *Rosemar Silver Co.*, *supra* at 142, and to "draw a principled, defensible line between those relationships to which a right of recovery should attach and those relationships with respect to which no such right should be recognized." *Norman* v. *Massachusetts Bay Transp. Auth.*, *supra* at 305.

*Judgment affirmed.*

LIACOS, J. (concurring). In light of my dissent in *Norman* v. *Massachusetts Bay Transp. Auth.*, *ante* 303 (1988), it may be helpful to the bar to state briefly why I join in the court's opinion.

---

[3] In *Feliciano, supra* at 142, we rejected as vague and indefinite the standard that cohabitants must have a stable and significant relationship to qualify for loss of consortium recovery which was adopted in *Butcher* v. *Superior Court*, 139 Cal. App. 3d 58, 70 (1983). We note that in *Elden* v. *Sheldon*, 46 Cal. 3d 267 (1988), the Supreme Court of California noted that both lower California courts and other jurisdictions have "rejected the *Butcher* test as inviting 'mischief and inconsistent results.'" *Id.* at 276. The court then rejected the *Butcher* standard and denied a loss of consortium recovery to unmarried cohabitants. *Id.* at 278-279.

In the instant case, there was no legally cognizable relationship between the stepparent and the stepchild. Unlike the husband-wife relationship in *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153 (1973), and the parent-child relationship in *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507 (1980), and in *Norman*, *supra* (Liacos, J., dissenting), the stepparent-stepchild relationship does not trigger certain well-established rights and duties under Massachusetts law.

For example, the wrongful death statute, G. L. c. 229, § 1 (1986 ed.), does not provide for a stepchild to recover for the death of a stepparent. See *Poyser* v. *United States*, 602 F. Supp. 436, 440 (D. Mass. 1984). Under common law, stepparents are under no legal obligation to support their stepchildren. *Brookfield* v. *Warren*, 128 Mass. 287, 288 (1880). *Worcester* v. *Marchant*, 14 Pick. 510, 512 (1834). But see *Roush* v. *Director of the Div. of Employment Sec.*, 377 Mass. 572, 575 (1979) (stepchild may be dependent under G. L. c. 151A [1986 ed.], the Employment Security Law). In addition, the Massachusetts Uniform Statutory Will Act, G. L. c. 191B, § 1 (1986 ed. & Supp. 1987), explicitly excludes stepchildren from its definition of "child" and "issue."

Just as cohabitants who do not formalize their relationship through a marriage may not recover for loss of consortium, *Feliciano* v. *Rosemar Silver Co.*, 401 Mass. 141, 142 (1987), so a stepchild whose relationship is not formalized in an adoption proceeding may not recover for such an alleged loss. Limiting loss of consortium claims to members of legally cognizable relationships provides a clear, principled, easily ascertainable standard which adequately distinguishes those entitled to recover from those involved in the "myriad relationships" which exist in society. *Id.*